

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-9-2009

# USA v. Goode

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2269

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Goode" (2009). *2009 Decisions*. Paper 1902.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1902

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-2269

_____

UNITED STATES OF AMERICA

v.

JAMES GOODE,

Appellant.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cr-00066-1)
District Judge: Honorable R. Barclay Surrick

_____

Submitted Under Third Circuit LAR 34.1(a)
February 6, 2009

Before:  McKEE, JORDAN, and LOURIE*, *Circuit Judges.*

(Filed: February 09, 2009 )

_____

OPINION OF THE COURT

_____

_____

     *Honorable Alan D. Lourie, Circuit Judge of the United States Court of Appeals for
the Federal Circuit, sitting by designation.

JORDAN, *Circuit Judge*.

James Goode appeals the District Court's denial of his motion to suppress the $2500 that police officers seized from him after his arrest on suspicion of selling narcotics. For the following reasons, we will affirm.

## I.      Background

On the evening of April 7, 2004, Marcus Allen, an experienced narcotics officer with the Philadelphia police, conducted surveillance in an area of the city known for drug trafficking. Accompanying him were four backup officers, including Frank Bonnet, stationed nearby. Bonnet, who had known Goode for six years, had been investigating a shooting incident in which Goode was suspected to be the gunman.

From approximately ninety feet away, Allen observed Goode and James Nole, both of whom Allen knew as reputed drug dealers, engaging in what he suspected to be the sale of narcotics. On two occasions, a person would approach Goode and hand him money. Both times, Goode said something to Nole, who retreated into the house behind them, emerged ten to fifteen seconds later, and gave something to the person who had approached Goode.

After the second transaction, Allen observed someone else point towards the backup officers and move toward Goode and Nole. He believed that person to be a "spotter," someone who conducts counter-surveillance in the area of drug transactions to try to discover if police officers are present. Allen called his supervisor, who terminated

2

the surveillance and instructed the officers to stop Goode and Nole for further investigation.

The officers drove to where Goode and Nole were standing. As they exited their vehicles and announced themselves as police, Allen heard Goode tell Nole, "Close the door, it's the police." (App. at 15.) Nole ran into the house and attempted to shut the door, but Allen and another officer followed him inside. As Nole fled, Officer Bonnet, with his gun drawn, quickly approached Goode, ordered him to lie on the ground, and applied handcuffs.

Allen caught up to Nole about five to seven feet inside the residence. From that vantage point, he saw, in plain view, two boxes of ammunition, two handguns, a large chunk of crack sitting on top of a scale, a plate of purple-tinted packages containing crack, a number of small, clear jars containing marijuana, and an undetermined amount of U.S. currency. After placing Nole under arrest, Allen told the officers outside what he had found. Based on that information, Bonnet arrested Goode. The police secured the house and took Goode and Nole to the 14th District Headquarters. There, Bonnet seized $2,559 from Goode's person.

On February 16, 2006, a grand jury returned a five-count indictment, charging Goode with various drug-related crimes.[1] Before trial, Goode moved to suppress the

---

[1]Specifically, Goode was charged with possession with intent to distribute crack, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); possession with intent to distribute crack within 1000 feet of a public school, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B),

3

money seized from his person.[2]  The District Court denied Goode's motion on October 20, 2006.  In an accompanying memorandum opinion, the Court held that the police had made a proper investigatory stop of Goode, supported by reasonable suspicion, that the reasonable suspicion ripened into the probable cause necessary to arrest Goode, and that the search of Goode at the stationhouse was a lawful search incident to arrest or, alternatively, a valid inventory search.  The case proceeded to trial, and, on October 26, 2006, a jury convicted Goode on all counts.  Now, Goode challenges the District Court's denial of his suppression motion.

## II.   Discussion[3]

This appeal turns on whether the police confrontation with Goode was an investigatory stop or an arrest at its onset.  Goode argues that, by ordering him to the ground at gunpoint and applying handcuffs, Officer Bonnet arrested him, and that he did

_____

860(a); and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D).  Each of the possession charges was accompanied with a charge of aiding and abetting, in violation of 18 U.S.C. § 2.  Goode was also charged with conspiracy to possess with intent to distribute crack and marijuana, in violation of 21 U.S.C. § 846; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A).

[2]Additionally, he moved to suppress the evidence seized from the residence, but he withdrew that motion at the suppression hearing.

[3]The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.  "We review the denial of a suppression motion for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the trial court's properly found facts."  *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006) (citing *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)).

so without probable cause. Thus, in Goode's view, the $2,559 seized from him at the stationhouse was acquired in violation of his Fourth Amendment rights, as the fruit of an unlawful arrest. As noted earlier, the District Court concluded that the police officers had executed an investigatory stop pursuant to their reasonable suspicion that narcotics trafficking was afoot, that Goode was lawfully arrested when that suspicion ripened into probable cause, and that the seizure of Goode's money resulted from a search incident to his lawful arrest. We agree with that analysis.

A police officer may conduct an investigatory stop of someone if the officer possesses a reasonable suspicion – based on "specific and articulable facts and … rational inferences [drawn] from those facts" – that the person is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Goode does not seem to argue that the police lacked the reasonable suspicion necessary to stop him for investigative purposes, and he could not credibly do so. Officer Allen, an experienced narcotics officer conducting surveillance in an area known for drug trafficking, observed two reputed drug dealers twice engage in a sequence of events characteristic of narcotics sales. When Allen and his fellow officers approached Goode and Nole, they heard Goode say, "Close the door, it's the police." (App. at 15.) These facts clearly give rise to the reasonable suspicion that Goode was doing something illegal.

Goode's contention is instead that Officer Bonnet's conduct exceeded the bounds of an investigatory stop. By drawing his gun, ordering Goode to the ground, and

5

handcuffing him, Bonnet executed an arrest for which the police lacked probable cause, according to Goode's argument. It is, however, an unpersuasive argument. In determining whether a *Terry* stop has escalated into an arrest, we assess "the reasonableness of the intrusion ..., balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's actions to his reason for stopping the suspect." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir.1995). Thus, an officer does not necessarily turn an investigatory stop into an arrest by drawing a gun or applying handcuffs. During a *Terry* stop, officers may take measures that are "reasonably necessary to protect themselves and maintain the status quo." *United States v. Hensley*, 469 U.S. 221, 235 (1985).

Under the circumstances here, it was reasonable for Bonnet to restrain Goode. Goode was suspected of dealing drugs, a crime with which "weapons and violence are frequently associated," *United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005), and Goode had instigated the immediate confusion of Nole's flight by urging him to "close the door" of their drug base. Importantly, Bonnet also knew that Goode was suspected of being the gunman in an unrelated shooting incident. He therefore had good reason to immediately put Goode in handcuffs, for the protection of the police and the protection of the community, while the officers conducted their brief investigation.

We agree with the District Court that Bonnet did not arrest Goode until after Officer Allen had seen abundant evidence linking Nole and Goode to narcotics

6

distribution and firearms possession and after Allen had communicated his findings to his fellow officers. When reasonable suspicion surrounding a suspect ripens into probable cause during the course of an investigatory stop, arrest of that suspect is lawful. That is precisely what happened here. "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed [by the suspect in question]." *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992). The drugs, guns, ammunition, and money found in the residence – when coupled with Officer Allen's observations and Goode's own words on seeing the police – would leave a reasonable person with little doubt that Goode was engaged in criminal activity.

The search of Goode at the stationhouse that yielded the $2,559 was, therefore, a search incident to a lawful arrest. Such searches have long been permitted under the Fourth Amendment. *See, e.g., Segura v. United States*, 468 U.S. 796, 824 n.15 (1984) (Stevens, J., dissenting) (validity of searches incident to arrest has been settled since *Agnello v. United States*, 269 U.S. 20 (1925)). Goode offers no reason why the stationhouse search – as opposed to the arrest – exceeded permissible bounds, nor can we discern any. Thus, the District Court did not err in denying his suppression motion.

## III.    Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

7