981 A.2d 46

Jonathan WILLIAMS

v.

STATE of Maryland.

No. 2749 Sept.Term, 2007.

Court of Special Appeals of Maryland.

Oct. 1, 2009.

80

Sherrie Glasser (Nancy Forster, Public Defender, on the brief), Baltimore, MD, for Appellant.

Jessica Carter (Douglas Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: HOLLANDER, MEREDITH, and FREDERICK J. SHARER (Retired, Specially Assigned), JJ.

HOLLANDER, Judge.

Following a trial in October 2007, a jury in the Circuit Court for Baltimore City convicted Jonathan Williams, appellant,[1] of possession with the intent to distribute cocaine, in violation of Md.Code (2002, 2007 Supp.), § 5–602(2) of the Criminal Law Article ("C.L.").[2] The trial judge subsequently sentenced appellant to twelve years of incarceration.

On appeal, appellant asks: "Did the trial court err in denying appellant's motion to suppress evidence?" Finding no error, we shall affirm.

## I. FACTUAL BACKGROUND

### A. Motion to Suppress

Appellant moved to suppress the narcotics recovered from him on February 25, 2007. The court held an evidentiary hearing prior to trial, at which the following evidence was adduced.

Baltimore City Police Detective Eric L. Green was on duty shortly after midnight on February 25, 2007. A seven-year veteran of the Western District Operations Unit, he focused "mainly . . . on weapons and narcotics." Detective Green had received specialized training in the packaging of street-level distribution of controlled dangerous substances ("CDS"), including 40 hours at the police academy and another 110 hours through the Federal Bureau of Investigation and the Drug Enforcement Agency, as well as yearly in-service training. In addition, he had observed "thousands and thousands of street level distribution methods," and had made over 5,000 arrests of people suspected of illegal drug activity. On this basis, he was accepted as an expert regarding the sale, identification, and distribution of illegal drugs.

---

**1.** In the court below, the case was captioned using Williams's aliases: *State of Maryland v. John Williams, a/k/a Jonathan Williams, a/k/a Davon Wilson.*

**2.** The jury acquitted appellant of distribution of cocaine.

Green testified that, on the night in question, he monitored a closed circuit, split-screen television from a room at the Western District precinct. The television produced images from two pole cameras mounted for such purpose. One camera produced images of the 2300 block of Druid Hill Avenue, and the other produced images of the 1100 block of Whitelock Avenue. According to Green, "Whitelock runs east and westbound. Druid Hill runs north and southbound with a southbound flow of traffic." Green described the area as "an open-air drug market," noting that "drugs are often sold in that area."

At approximately 12:30 a.m., via the pole camera located at the 2300 block of Druid Hill Avenue, Detective Green observed "a black male who was wearing a dark hat and a dark jacket at the time." Although it was dark outside, the street was "well lit with street lights," and there was nothing obstructing Detective Green's view. The male was later identified as appellant; Detective Green referred to him as Mr. Williams.

Detective Green testified that he initially observed the following:

... Mr. Williams was reaching around into his front area of his body. He had his back turned towards me. Mr. Williams then turned around, had a conversation with another unknown black man who was wearing a dark coat. At this time, the unknown black male that he had just conversated [sic] with placed both of his hands behind his back at which time Mr. Williams handed the unknown black male a small object. Mr. Williams then again reached into his front and retrieved another object from the unknown black male which I believe[d] to be U.S. currency at that time.

Demonstrating to the trial court, Detective Green continued: Okay. If I'm—this is myself and this is my monitor. Mr. Williams had his back towards me like this. He then looked to his right where the unknown black male walked here. Had a brief conversation. The unknown black male then backed up with his hands like this. Mr. Williams then

handed him an object, a small object at which time I believe [sic] to be CDS. Mr. Williams then returned his hand and retri[ev]ed an object from the unknown black male. It was kind of a grip. So, I believed it was U.S. currency that the unknown black male was handing Mr. Williams and then he went back into his front area.

As noted, appellant's back was turned toward Detective Green. Consequently, the detective could not see where, at his front, appellant was reaching. However, Detective Green believed that the drugs came from "somewhere between [appellant's] waist and the rest of his upper torso because [appellant] didn't bend down" and both of appellant's "arms were tucked—like he was reaching towards the middle for something." Green testified that appellant used his right hand to deliver the object believed to be drugs to the other male.

Based on the interaction between appellant and the unknown male, Detective Green opined: "I believe I observed a CDS transaction." Further, Detective Green stated that, based on his experience and training, he believed that appellant was the dealer and the other man was the buyer, because "the purchaser left the area which buyers do once they retrieve the drugs." The trial court asked Green how he knew that appellant handed drugs to the unknown black male, and not something else. Detective Green responded:

From the Defendant concealing what he was passing along to the unknown person. Also, the unknown person, his actions, where he held his hands behind his back trying to conceal what he was doing. . . .

\* \* \*

If it was candy, Your Honor, there wouldn't be a need to conceal what you're passing along. I observed thousands and thousands of street distribution methods, and the most common distribution method is for a dealer to try to conceal the actual drugs and also, when he passes it along, it's not—let's say if you're giving somebody change on the street. You're not going to try to conceal it. Drug distributions are usually with a closed hand. They drop the drugs, take the

money. If you're passing something that's not contraband, it's usually not concealed. If I'm giving somebody change for $5.00, I'm going to hand him a bill. I'll hand him other $1.00 bills like this. It's not concealed. It's no need to conceal it if it's not contraband.

After witnessing what he regarded as a CDS transaction, Green "notified an arrest team to stop" appellant. But, appellant exited the area "prior to the arrest team responding." Less than one hour later, at approximately 1:20 a.m., Detective Green again identified appellant, via closed circuit cameras, at the intersection of Druid Hill and Whitelock, wearing the same clothing and cap, "just walking in the area." Detective Green communicated this information to the arrest team.

Detective Green told the arrest team that appellant "was fiddling with his sleeves." Based on this observation, Detective Green believed that "drugs [were] possibly hidden in [appellant's] sleeves," and he relayed this information to the arresting officers. He also told the team that "the drugs are probably from anywhere from his waistband, maybe in his jacket, or somewhere on his upper person." Defense counsel asked Detective Green which sleeve appellant was "fiddling with." He responded that "it was kind of both sleeves. He was doing this and reaching into both sleeves."

The arrest team "stopped [appellant] at the intersection of Whitelock and Druid Hill. They removed his jacket." According to Green, the police "recovered a zip lock baggy from [appellant's] left sleeve containing 35 smaller blue zip lock baggies with a white rock substance, suspected crack cocaine. He was placed under arrest."

Through radio communication, Detective Green positively identified appellant as the man he had observed earlier. The following testimony is pertinent:

[DEFENSE COUNSEL]: He had been gone for an hour. How did you know he had drugs?

[DETECTIVE GREEN]: He had them earlier.

[DEFENSE COUNSEL]: Okay. Well, he had what you believed to be drugs, correct?

[DETECTIVE GREEN]: Correct.

[DEFENSE COUNSEL]: When was Mr. Williams placed under arrest?

[DETECTIVE GREEN]: Approximately 1:20 a.m.

[DEFENSE COUNSEL]: No, after the—after the arrest team responded, how long after that was he placed under arrest?

[DETECTIVE GREEN]: Once Officer John recovered the CDS from his left sleeve.

[DEFENSE COUNSEL]: Why wasn't he placed under arrest when they responded if you're saying he was conducting a CDS transaction with you viewing him, why didn't you place him under arrest immediately upon stopping him?

[DETECTIVE GREEN]: Because the buyer wasn't arrested.

[DEFENSE COUNSEL]: So, you don't know what exactly happened during that time, correct?

Relying on § 2–202(b) of the Criminal Procedure Article of the Md.Code ("C.P."), the trial court found that the police had probable cause to arrest appellant based on Detective Green's observation of appellant engaging in what he (Detective Green) believed to be the sale of illegal narcotics. In making its ruling, the trial court said:

[B]ased on the officer's training and experience in the field, he clearly testified that [appellant's] actions were consistent with prior drug sales in that area. The mere fact that [appellant] alluded [sic] him after the sale isn't significant. May be significant if when he was arrested, he didn't have any drugs, then it would be nothing to—since the buyer had left, there would have been nothing really to charge him with because, you're right, based on the observation, even though it would constitute probable cause, it was not a prima facie case because there was nothing to analyze.

Part of the crime of possession with distribution is possession with intent to distribute and an element of possession is, possession with intent to distribute is possession. That requires a knowing possession of the specific drug and that wouldn't be present if he didn't have any drugs on him since the buyer alluded [sic] him, but that has nothing to do with probable cause. I believe he had probable cause at that point to arrest him.

... [A]ccording to 2–202 in the Criminal Procedure Article sub-part (b) [3] police officer without a warrant may arrest a person if the police officer has probable cause to believe that a felony has been committed or attempted and the person has committed or attempted to commit the felony whether or not in the presence or within the view of the police officer.

In this case, since the same officer observed [appellant] back in that area, general area, it was essentially him directing the arrest and the other officers were acting in concert based on the collective knowledge of the police, and acting at his direction. The mere fact that he saw him or may have seen him also fumbling with his coat jacket, I agree with you, it's not important with regard to probable

---

**3.** C.P. § 2–202 provides, in part:

**Warrantless arrests—In general**

(a) *Crimes committed in presence of police officer.*—A police officer may arrest without a warrant a person who commits or attempts to commit a felony or misdemeanor in the presence or within the view of the police officer.

(b) *Probable cause to believe crime committed in presence of officer.*—A police officer who has probable cause to believe that a felony or misdemeanor is being committed in the presence or within the view of the police officer may arrest without a warrant any person whom the police officer reasonably believes to have committed the crime.

(c) *Probable cause to believe felony committed.*—A police officer without a warrant may arrest a person if the police officer has probable cause to believe that a felony has been committed or attempted and the person has committed or attempted to commit the felony whether or not in the presence or within the view of the police officer.

cause to arrest because what he was being arrested for was the distribution of drugs for probable cause.

Now granted, without the buyer, if he was just fumbling with his coat and didn't have any drugs on him, they wouldn't be able to successfully prosecute the case. Although, the arrest and the search incident to arrest, in my opinion, was [sic] good. Once they arrested him, they had a right to search him. So, regardless of the order, it is clear that the officer directed them to stop and arrest him for that earlier sale.

No matter how you cut it, that's what they did. The mere fact that they went for the coat first is really insignificant cause he was directing them to arrest, and search incident to arrest is lawful, and is an exclusion from a warrantless arrest, I'm sorry, a warrantless search.

So, under both of those arguments, the fact that you could arrest him without a warrant for the earlier sale based on what I find to be probable cause and the search incident to arrest would have naturally followed. So, it's almost like the actual search is almost an inevitable discovery.

## B. Trial

At trial, Detective Green provided testimony similar to his motion testimony. This included the observations he made from the surveillance camera and the evidence surrounding appellant's stop and arrest. The parties also stipulated that the substance seized from appellant was analyzed and tested positive for crack cocaine.

We shall include additional facts in our discussion.

## II. DISCUSSION

Appellant does not contest the manner of arrest. Rather, he disputes the court's finding of probable cause for the arrest, because Detective Green could not identify the objects that were passed between Williams and the unknown man. According to Williams, "[t]he record shows little more than the observation by Detective Green of an exchange of an unidenti-

fied object in exchange for what might have been currency, in an area described as an open air drug market." He maintains that "an exchange of an unidentified object for money in a high-drug area simply does not constitute probable cause to arrest."

Further, appellant complains:

The item was never identified; there was no evidence that it was a glassine envelope, vial, or other object commonly used for storing illicit drugs. Additionally, there was no evidence of a "stash" and no evidence that appellant or the second male looked up and down the street or engaged in any other furtive behavior. Indeed, Detective Green testified that after the exchange appellant did not engage in any furtive behavior, but rather casually walked from the area. As discussed above, an exchange of an unidentified object for money in a high-drug area simply does not constitute probable cause to arrest.

The State counters that, based on the totality of circumstances, Detective Green had probable cause to believe that a crime was being committed. Therefore, in accordance with C.P. § 2–202(b), the police officer was justified in ordering the arrest of appellant without a warrant.

"In reviewing the ruling on a motion to suppress evidence, we consider only the evidence contained in the record of the suppression hearing." *Bost v. State,* 406 Md. 341, 349, 958 A.2d 356 (2008); *see Rush v. State,* 403 Md. 68, 82–83, 939 A.2d 689 (2008). "We do not consider information from the trial record when ruling on a pre-trial motion to suppress evidence." *Padilla v. State,* 180 Md.App. 210, 218, 949 A.2d 68 (citing *Paulino v. State,* 399 Md. 341, 348, 924 A.2d 308, *cert. denied,* 552 U.S. 1071, 128 S.Ct. 709, 169 L.Ed.2d 571 (2007)), *cert. denied,* 405 Md. 507, 954 A.2d 468 (2008). Moreover, we "do not engage in *de novo* fact-finding." *Haley v. State,* 398 Md. 106, 131, 919 A.2d 1200 (2007). "Instead, we 'extend great deference to the findings of the motions court as to first-level findings of fact and as to the credibility of witnesses, unless those findings are clearly erro-

neous.' " *Padilla,* 180 Md.App. at 218, 949 A.2d 68 (*quoting Brown v. State,* 397 Md. 89, 98, 916 A.2d 245 (2007)).

In making our ruling, we "review the evidence and the inferences that may be reasonably drawn in the light most favorable to the prevailing party." *Bost,* 406 Md. at 349, 958 A.2d 356. But, "we make our own independent appraisal as to whether a constitutional right has been violated by reviewing the law and applying it to the facts of the case." *Id.*; *see also Crosby v. State,* 408 Md. 490, 504, 970 A.2d 894 (2009); *State v. Williams,* 401 Md. 676, 678, 934 A.2d 38 (2007); *Williams v. State,* 372 Md. 386, 401, 813 A.2d 231 (2002) (stating that reviewing court makes "an independent, de novo, constitutional appraisal by applying the law to the facts presented in a particular case"); *Nathan v. State,* 370 Md. 648, 659, 805 A.2d 1086 (2002) (recognizing that, in review of a ruling upon a motion to suppress, appellate court considers facts in the light most favorable to the prevailing party).

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the person to be searched and the person or things to be seized." Moreover, "[t]he protections of the Fourth Amendment are binding on the State of Maryland through the Due Process Clause of the Fourteenth Amendment." *Crosby,* 408 Md. at 505, n. 17, 970 A.2d 894. However, the Fourth Amendment does not protect against all seizures. Rather, it protects "only against *unreasonable* searches and seizures." *Wilson v. State,* 409 Md. 415, 427, 975 A.2d 877 (2009) (emphasis in original); *see Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

A police officer may effect a warrantless arrest, in accordance with C.P. § 2–202. C.P. § 2–202(b) and (c) pertain to probable cause to believe a crime was committed. It is well settled that "[a] finding of probable cause requires less evi-

dence than is necessary to sustain a conviction, but more evidence than would merely arouse suspicion." *Haley,* 398 Md. at 133, 919 A.2d 1200; *see State v. Lemmon,* 318 Md. 365, 379, 568 A.2d 48 (1990) (recognizing that determination of probable cause is based on probabilities, not certainties).

Maryland courts have repeatedly recognized that probable cause is a "non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Doering v. State,* 313 Md. 384, 403, 545 A.2d 1281 (1988); *see Haley,* 398 Md. at 132–33, 919 A.2d 1200; *Collins v. State,* 322 Md. 675, 680, 589 A.2d 479 (1991). In the words of the Supreme Court:

> The probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.
>
> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized.

*Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (citations and quotations omitted). *See also Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Wilkes v. State,* 364 Md. 554, 585, 774 A.2d 420 (2001); *Doering v. State,* 313 Md. 384, 403, 545 A.2d 1281 (1988).

In considering the matter of probable cause, the Court of Appeals set forth the following factors in *Haley,* 398 Md. at 132–33, 919 A.2d 1200 (citations omitted):

To determine whether probable cause exists, we consider the totality of the circumstances, in light of the facts found to be credible by the trial judge, factoring in the variables of the information leading to police action, the environment, the police purpose, and the suspect's conduct. Probable cause exists where the facts and circumstances within the knowledge of the officer at the time of the arrest, or of which the officer has reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the suspect had committed or was committing a criminal offense.

Notably, experience and special knowledge of police officers may be considered in determining probable cause. *Longshore v. State*, 399 Md. 486, 534, 924 A.2d 1129 (2007). Indeed, "considerable credit can be given to the expertise of law enforcement officers in conducting investigations into illegal drug activity." *Birchead v. State*, 317 Md. 691, 703, 566 A.2d 488 (1989). Accordingly, as the court below recognized, Detective Green's training and experience in street level distribution of illegal drugs were relevant to the court's determination of whether Green had probable cause to believe that the hand-to-hand transaction he observed was evidence of the commission of a crime.

Further, the geographical location of an incident is relevant to the determination of probable cause. *See Matoumba v. State*, 162 Md.App. 39, 50, 873 A.2d 386 (2005) (upholding a frisk, and noting as a factor in the reasonable suspicion analysis that the stop occurred in a "dangerous" area), *aff'd. on other grounds*, 390 Md. 544, 890 A.2d 288 (2006); *Allen v. State*, 85 Md.App. 657, 667–68, 584 A.2d 1279 ("Although not dispositive in and of itself, the fact that the Homewood and Biddle area was well known to the officers as notorious for its drug activities, shootings, and homicides is a factor that may be considered in the totality of circumstances."), *cert. denied*, 323 Md. 1, 590 A.2d 158 (1991); *Timms v. State*, 83 Md.App. 12, 23, 573 A.2d 397 (defendant's presence in alley at unusual time in area characterized by

breaking and entering and narcotics reports served to create suspicion), *cert. denied,* 320 Md. 801, 580 A.2d 219 (1990); *Jackson v. State,* 81 Md.App. 687, 693, 569 A.2d 712 (1990) (stating that, as police arrived in response to tip of illegal drug transactions, men left, "which was consistent with actions of drug buyers in the area"). *See also United States v. Green,* 670 F.2d 1148, 1152 (D.C.Cir.1981) (recognizing that geographical area is valid consideration in probable cause determination). Notably, the hand-to-hand transaction at issue occurred at 12:30 a.m. in an area described by Green as an "open air drug market."

Appellant maintains that "while Detective Green's observation of an exchange of some kind between the two men may have created reasonable suspicion, it did not constitute probable cause to arrest." He notes that there is no reported Maryland decision addressing the question of whether probable cause to arrest exists "where a police officer, working in, what is categorized as an 'open air drug market,' has observed some kind of exchange in which something is passed from one person to another, but the officer is unable to see either object." Appellant asks that we follow the holdings of the courts of Pennsylvania and Florida, which concluded that, "even viewing the facts and circumstances through the eyes of a trained officer," probable cause did not exist to support a warrantless arrest where the officers did not see the exact items being transferred. *See, e.g., Commonwealth v. Dunlap,* 596 Pa. 147, 941 A.2d 671, 677 (2007); *Commonwealth v. Banks,* 540 Pa. 453, 658 A.2d 752, 752 (1995); *Burnette v. State,* 658 So.2d 1170, 1171 (Fla. 2d DCA 1995); *Howard v. State,* 623 So.2d 1240, 1241 (Fla.App.2nd Dist.1993); *Winters v. State,* 578 So.2d 5, 7 (Fla.App.2nd Dist.1991).

However, we are persuaded by the many other jurisdictions that have considered the issue and concluded that probable cause may be found even if a trained, experienced police officer is not able to see whether the object transferred by one person to another was contraband. *See, e.g., Darling v. State,* 768 A.2d 463, 466 (Del.2001) (stating that "personal

observations by an experienced police officer at a known open-air drug sale area constituted sufficient probable cause to arrest [suspect] for contraband drug dealing"); *Prince v. United States*, 825 A.2d 928, 930, 933–34 (D.C.App.2003) (finding probable cause for arrest based on exchange of money for a "small object," and stating that "it is not necessary that the police officer be able to see clearly that the small object being handed from one person to another is contraband"); *Commonwealth v. Kennedy*, 426 Mass. 703, 690 N.E.2d 436, 438–39 & n. 2 (1998) (finding probable cause for arrest where officer with "extensive experience in street level narcotics sales" witnessed exchange of unidentified objects through car window in high drug area with a known drug dealer); *Commonwealth v. Santaliz*, 413 Mass. 238, 596 N.E.2d 337, 339–40 (1992) (finding probable cause for arrest based on observations and experience of police officer who saw exchange of small object from waistband for money, furtive actions of participants, in high crime area); *Tobias v. United States*, 375 A.2d 491, 494 (D.C.App.1977) (finding probable cause for arrest and stating: "The exchange of small objects for currency is an important and sometimes decisive factor in determining the existence of probable cause"); *United States v. White*, 655 F.2d 1302, 1303–04 (D.C.Cir.1981) (upholding finding of probable cause for arrest based on exchange of currency for small object in high narcotics area); *State v. Moore*, 181 N.J. 40, 853 A.2d 903, 907 (2004) (upholding warrantless arrest by experienced police officer in neighborhood known for heavy drug trafficking; the police officer witnessed money given in exchange for "small unknown objects"); *People v. Jones*, 90 N.Y.2d 835, 660 N.Y.S.2d 549, 683 N.E.2d 14, 15 (1997) (finding probable cause based on single exchange of unidentified object "in a manner typical of a drug sale," such as transfer of money in high drug location and "furtive" conduct); *People v. Rodriguez*, 36 A.D.3d 567, 828 N.Y.S.2d 62, 63 (N.Y.App.Div.2007) (affirming denial of motion to suppress, noting defendant's "brief conversation" in "drug prone location," exchange of money for unidentified object fitting in hand; and stating that " 'any person ... using good common

sense' " would have known defendant was selling drugs) (citation omitted); *State v. Castro,* 891 A.2d 848, 854 (R.I.2006) (finding probable cause for arrest based on extensive experience of detective, who saw exchange of money for small white bag in area of high crime).

As one scholar has said:

> The kinds of suspicious events and circumstances which a police officer on patrol might confront are virtually infinite in their variety. As one court has noted with respect to this particular area, "two cases are seldom sufficiently alike for the first to be an absolute binding precedent for the second." It is thus not possible to generalize as to what first-hand information meets the probable cause requirement of the Fourth Amendment; [ ] rather, the best that can be done is to examine certain situations which recur with sufficient frequency that some assessment is possible concerning what first-hand knowledge contributes toward a finding of probable cause.

WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 3.6 at 303–04 (4th ed. 2004 & Supp. 2008–09) (citation omitted); *see also* W.E. RINGEL, SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS, § 23:8 (1979) (discussing probable cause in drug cases).

██ "When evaluating whether a police officer had probable cause to arrest without a warrant, 'we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.' " *Stone v. State,* 178 Md.App. 428, 440, 941 A.2d 1238 (2008) (citations omitted). As the Court of Appeals said in *Crosby,* 408 Md. at 508, 970 A.2d 894, " 'context matters: actions that may appear innocuous at a certain time or in a certain place may very well serve as a harbinger of criminal activity under different circumstances.' " (*quoting United States v. Branch,* 537 F.3d 328, 336 (4th Cir.2008)).

██ Under the applicable "totality of the circumstances" analysis, we are satisfied that appellant's arrest was founded on probable cause. We explain.

Detective Green testified as an expert in CDS transactions. As we noted, he had "observed thousands and thousands of street distribution methods," and had made over 5,000 arrests for illegal drug transactions. In addition, when Detective Green observed the two men on closed circuit television through the police department's pole cameras, his specific purpose was to monitor a City block that was well known for its illicit drug trafficking activity. He watched appellant and the other male have a brief conversation, taking particular note of their hand gestures, their manner of gripping, and the fact that they each took particular caution to conceal the small object being passed from one to the other. Based on Detective Green's extensive experience and expertise, he believed that appellant was engaged in a CDS transaction, and that appellant was the seller. In this regard, Detective Green stated that "the purchaser left the area which buyers do once they retrieve the drugs." *See Crosby*, 408 Md. at 508, 970 A.2d 894 (in making determination of reasonable suspicion, the "officer must explain how the observed conduct, when viewed in the context of all of the other circumstances known to the officer, was indicative of criminal activity").

To be sure, Detective Green could not specify the objects passed between the two men. Although appellant argues that the men did not engage in furtive behavior by "look[ing] up and down the street," he ignores other evidence of furtive behavior, by which the men sought to conceal what they were exchanging. We agree with the State, which asserts: "That Detective Green could not actually see what was passed from Williams to the other man is not surprising given the furtive efforts taken by Williams and the other man."

In sum, Detective Green did not need absolute certainty in regard to the objects that were exchanged here in order to obtain probable cause. As the Court said in *Tobias*, *supra*, 375 A.2d at 494, "[e]ven though there might have been innocent explanations for appellant's conduct, it is not necessary that all innocent explanations for a person's actions be absent before those actions can provide probable cause for an

arrest." Under the totality of the circumstances, we are satisfied that Detective Green had probable cause to believe he observed appellant commit a CDS offense. Therefore, his arrest order was not illegal.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**