# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,       )
                                  )
                                  )
                                  )

      v.                              )      ID No. 2408008330

KYRAN R. JONES,

Defendant.

Submitted: January 3, 2025
Decided: May 27, 2025

## OPINION

*Upon Defendant's Motion to Suppress*
**GRANTED**

Beth Savitz, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for the State of Delaware.

Olivia Phillips, Esquire, Assistant Public Defender, Office of Defense Services, Wilmington, Delaware. Attorney for Defendant.

**BUTLER, R.J.**

## INTRODUCTION

The Court is once again called upon to sort out the constitutional implications of a police encounter with suspected drug activity. The Court considers the facts as adduced at a hearing on Defendant's motion to suppress, and, as it must, considers some of the many precedents concerning the seizure of persons suspected of drug dealing. Finding that the police lacked sufficient cause to justify the seizure of the occupants of the vehicle, the Court grants Defendant's motion.

## FACTS

Law enforcement had become familiar with the rear parking lot of a Wawa store located at Route 13 and Memorial Drive as a result of numerous drug investigations at that location in the past.[1]

On August 15, 2024, three undercover police vehicles set up surveillance in the rear parking lot of the Wawa. While so situated, they saw a white Lincoln with two occupants pull into a parking spot, but neither occupant got out. The passenger appeared to be a female, alternately looking around the parking lot and looking at her phone.[2]

---

[1] The details of these past investigations are not directly relevant to this case, but the testimony was that when drug deals were arranged at the behest of the police, "mostly what we see is usually they park in a secluded area away from, typically, the public view. It could be in a parking spot. It could be – sometimes I've seen them at a gas pump, sometimes at a charging station. But they park trying to blend in with the public, if anything." Tr. of Suppression Hr'g at 11, State v. Jones, ID No.2408008330 (Jan. 10, 2025) [hereinafter Tr.].

[2] Tr. at 19.

After about 15 minutes of this inaction, a red Tesla entered the rear parking lot. It stopped briefly near the Lincoln, the occupants appeared to converse briefly, and then the Tesla moved to a Tesla charging station in the lot.[3] Once the Tesla parked, the female came out of the Lincoln, walked the short distance to the Tesla, and entered the rear door and sat down.[4]

From his partially obscured vantage point, Detective Guevara testified that he saw the two occupants of the Tesla "turn their bodies towards the rear of the car where she was seated at and then both of their hands go toward her where a suspected hand to hand transaction was observed."[5] Officer Guevara did not see any money or drugs change hands.[6] The female got out of the Tesla and walked back to the Lincoln. It was not apparent that she was carrying anything nor did she engage in any "furtive gestures."

Detective Balen was part of the surveillance team, but, from his vantage point, he testified:

> Q. You could not see what was going on in the Tesla?
> A. Correct.

---

[3] Tr. at 20, 23-24.

[4] Tr. 27.

[5] Tr. at 27.

[6] Tr. at 62.

> Q. Okay, so you have no idea whose hands went where or anything like that?
>
> A. Correct. I did not see into the car.[7]

The third state witness was Sergeant Shaub, who was also present during the surveillance, in a third vehicle. But from his vantage point, his surveillance of the Tesla was hampered:

> Q. Were you able to see into the Tesla?
>
> A. I didn't have a – because of my height and the sun, there was a glare, but I could tell there was two occupants of the car.[8]

Although he saw the female move from the Lincoln to the Tesla, he was unable to see what she did once inside:

> Q: Okay. And were you able to see into the Tesla to see what was happening?
>
> A: No. I could see movement but not –
>
> Q: - okay. Were the four of you in contact with each other while all of this was going on?
>
> A: Correct.[9]

From here, the police observed the female return to the Lincoln and sit in the back seat of the Lincoln. The police could have – and often do – pursue the "buyer" to confirm a sale and then arrest the "seller" based upon the confirmation of a sale. Here, however, the police felt they did not have sufficient personnel available, so they elected to stop both vehicles simultaneously.

---

[7] Tr. at 102.

[8] Tr. at 120.

[9] Tr. at 121.

4

While one officer engaged the Lincoln, the two others pinned the Tesla into its parking spot. Police alighted with handguns drawn and pointed at the occupants. The driver and passenger were removed from the Tesla and handcuffed on the ground. Returning to the open driver's side door, drugs were located in plain view on the floor on the driver's side of the vehicle.

The State seeks to introduce the drug evidence at trial against the Defendant – the passenger in the Tesla. The defense has moved for suppression, arguing that the search and seizure of evidence from the Tesla was not supported by probable cause or reasonable suspicion. An evidentiary hearing was held, from which the record cited above is derived.

## STANDARD OF REVIEW

On a motion to suppress evidence searched or seized without a warrant, the State bears the burden to establish that the "challenged seizure comported with the rights guaranteed by the United States Constitution, the Delaware Constitution, and relevant statutes."[10] Warrantless searches or seizures are "presumptively unreasonable, subject to certain exceptions."[11] When the search or seizure occurred

---

[10] *State v. Roundtree*, 2017 WL 4457207, at *2 (Del. Super. Oct. 4, 2017) (citing *State v. Lambert*, 2015 WL 3897810 at *3 (Del. Super. 2015)).

[11] *State v. Holmes*, 2022 WL 4353455, at *3 (Del. Super. Sept. 9, 2022) (citing *Roundtree*, 2017 WL 4457207, at *2).

without a warrant, then the State must establish the "reasonableness" of the search or seizure by the "preponderance of the evidence."[12]

## ANALYSIS

For the purposes of this motion and our analysis, the critical moment came when the officers ordered the driver of the Tesla out of the car and to the ground and were able to see the inside floorboard on the driver's side. If they had a right to be in that place at the time they saw the contraband in "plain view," the seizure of contraband from the vehicle would not be subject to dispute.[13]

### 1. The gunpoint removal of the Tesla occupants was an arrest.

At the point of ordering the Tesla occupants out, the female in the Lincoln had not yet admitted that she purchased drugs from the Tesla. Her statement is not part of the evidence of criminal activity supporting the actions against the Tesla occupants. Before ordering the driver out of the Tesla, the police had not actually seen a "hand to hand" drug transaction take place inside the Tesla, or anywhere else. Police did not know the identity of any of the participants – either in the Tesla or the Lincoln. Nor were they in the parking lot to surveil any particular car, subject or other investigative lead. Thus, any suspicion they had of a drug deal was derived

---

[12] *State v. McElderry*, 2018 WL 4771786, at *2 (Del. Super. Oct. 1, 2018).

[13] "The United States Supreme Court held that the seizure was justified under the plain view doctrine. The Court focused primarily on the doctrine's requirements that the officer lawfully be in a position to observe the contraband and that the evidentiary value of the item be immediately apparent." *Hardin v. State*, 844 A.2d 982, 987 (Del. 2004) (citing *Texas v. Brown*, 460 U.S. 730, 737 (1983)).

6

solely from their own experience with how buyers interact with sellers and the fact that the rear of the Wawa parking lot is sometimes used to facilitate drug transactions.

Defendant argues that taking the driver and passenger out of the Tesla was accompanied by all of the trappings of an arrest that must be supported by probable cause. This is not an insubstantial argument.

In *Darling v. State*,[14] the Delaware Supreme Court reviewed a case in which police believed they had witnessed a suspect in a red bandana deal drugs to passers by in an "open air" drug market. As uniformed officers came down the road, the "special investigations tactical unit "jumped up, took off after them yelling, State Police, get on the ground."[15] They found Darling hiding in the bushes and handcuffed him at gunpoint. The Supreme Court said "under the unique circumstances of this case, that the police conduct in carrying out a plan to surround Darling at gunpoint and order him to the ground was more than a seizure but, in fact, constituted an arrest under both the United States Constitution and the Delaware Constitution."[16] The Court then analyzed the facts and concluded that the arrest was supported by probable cause.

---

[14] 768 A.2d 463 (Del. 2001).

[15] *Id.* at 465.

[16] *Id.*

In *Darling*, the decision to arrest was effected by pulling him out of the shrubbery, taking him to the ground and cuffing him at gunpoint. Here, the suspects were pulled from a car with an equal show of force. It seems quite clear that it was an "arrest" under Darling, but the Court is unable to conclude that the arrest was supported by probable cause.

## 2. Even considered as an investigative detention, the seizure of the Tesla occupants was unreasonable.

The period of time between the arrest of the Tesla occupants and the removal of the Lincoln occupant who gave up the drugs she had just purchased from the Tesla was brief. The length of the detention is one of the factors considered in determining whether the encounter was an arrest or an "investigative detention." So while the show of force depicts an arrest, the length does not. This Court concludes it was an arrest, acknowledging that the conclusion is not free from doubt. [17]

Here, the police had not confirmed a drug sale when they took down the Tesla occupants. Perhaps that was due to a manpower shortage, but the reason is basically irrelevant: the intrusion on the subjects of the search is the constitutional question posed, not law enforcement's investigative options. Distinguishing *Darling* here,

---

[17] *See United States v. Sharpe*, 470 U.S. 675, 685 (1985) (acknowledging the "difficult line-drawing problems in distinguishing an investigative stop from a *de facto* arrest"); *United States v. Goode*, 309 F. App'x 651, 653 (3d Cir. 2009) ("In determining whether a *Terry* stop has escalated into an arrest, we assess "the reasonableness of the intrusion . . . balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's actions to his reason for stopping the suspect.") (quoting *Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir.1995)).

when they ordered the Tesla occupants out at gunpoint, the police were still lacking the probable cause they might have had a few moments later when the female admitted she had drugs that she had purchased from the Tesla.

In its brief, the State argues that this was not an arrest, but merely an "investigative detention" that could be supported by any "reasonably articulated suspicion." As to removing them from the vehicle at gunpoint, cuffing them and putting them on the ground, the State cites only *Pennsylvania v. Mimms*[18] for the proposition that police may remove individuals from a car pursuant to a *Terry* stop. *Mimms*, however, was a traffic enforcement stop and merely stands for the proposition that removing a subject from the car while investigating a traffic violation is a *de minimis* intrusion beyond the intrusion of stopping the car. This was a far cry from a *Mimms* "exit order" by the police.[19]

In *Flowers v. State*,[20] the Delaware Supreme Court said:

> Generally, a show of force, including the use of drawn weapons, does not render an investigative stop unreasonable if the police determine that it is "reasonably necessary to protect themselves and maintain the status quo." However, "the use of guns and handcuffs during an investigatory stop must be justified, and [courts] are required to look 'at the intrusiveness of all aspects of the incident in the aggregate.'" Similarly, forcing a detainee to lie down to prevent flight might be justified under the circumstances. Factors

---

[18] 434 U.S. 106 (1977).

[19] *Davis v. State*, 2023 WL 7382873, at *3 (Del. Nov. 8, 2023) (exit orders are permissible under *Mimms*); *Murray v. State*, 45 A.3d 670, 676 (Del. 2012), *as corrected* (July 10, 2012) (same); *State v. Medina*, 2020 WL 104323, at *6 (Del. Super. Jan. 7, 2020) (same).

[20] 195 A.3d 18, 28-29 (Del. 2018).

courts apply in determining whether a show of force is justified include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." The United States Supreme Court has cautioned that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[21]

Looking at this the incident "in the aggregate," the police had no information about the Tesla occupants, armed, dangerous, or otherwise. It was broad daylight in a remote parking lot. There was no evidence or testimony that the occupants made any furtive gestures or attempted to flee. There was no evidence that the police were under any immediate threat of the use of force and no evidence that any subject (except the police) had guns.

The Court is mindful that context is important here, as everywhere. There was law enforcement testimony about drug deals at the Wawa. As recited earlier, the description of the deals and dealers was general at best: they park away from other cars, they park near other cars to "blend in" with the public. They are at the gas pumps, they are in the parking lot. When the "description" of drug deals is sufficiently broad to encompass every occupant and every car at the Wawa, it describes nothing and does not uniquely identify drug activity. The Court is thus unconvinced that it should credit the broad descriptions provided by law

---

[21] *Id.* (footnotes omitted).

enforcement as sufficiently indicative of drug business – as opposed to any other ordinary commerce – being conducted.

Indeed, the only factor suggesting the need for this show of force was because it was suspected that the Tesla occupants were drug dealers and sometimes drug dealers are armed. But the courts have never sanctioned gunpoint investigative detentions in every drug investigation and the State has suggested no particular circumstances here justifying it.

It is fair to say that the circumstances were "tense, uncertain and rapidly evolving," but the circumstances were entirely controlled by the police, not the suspects. The decision to draw weapons was thus not in response to any uncertain or rapidly evolving circumstance. Rather it was one made by police officers engaged in the "often competitive enterprise of ferreting out crime."[22]

As it happens, we have just recently dealt with drugs in Wawa environs in the case of *State v. Register*.[23] In that case, police were actively surveilling Lopez, an individual known to deal drugs in Wawa parking lots. They had followed him to the gas pumps at a Wawa. Register walked past the suspect and something was exchanged. Register continued on and was stopped a short distance away while other units followed Lopez out of the Wawa. The stop of Register was not at

---

[22] *Johnson v. U.S.*, 333 U.S. 10, 14 (1948) (citing *United States v. Lefkowitz*, 285 U.S. 452, 457 (1932)).

[23] 2023 WL 6323594 (Del. Super. Sept. 26, 2023).

gunpoint and was limited to the question of his identity and whether he had any contraband, to which Register admitted to a handgun concealed in his backpack.

No drugs were recovered from Register, despite the police belief that they had witnessed a "hand to hand" transaction. This Court denied Register's suppression motion, ruling that the limited stop of Register was grounded in a reasonable, articulable suspicion.

That ruling was affirmed on appeal, albeit in a 3-2 decision over a vigorous dissent. The dissenters distinguished other "reasonable articulable suspicion" cases like *Hudson v. State*,[24] *Lofland v. State*,[25] and *Hall v. State*,[26] and felt that "the totality of the circumstances shows that officers were closer to a hunch than reasonable articulable suspicion."[27]

A distinguishing factor in *Register*, not present here, is that Register engaged directly with an individual known by the police to deal drugs at convenience stores and who was under active surveillance. Here, the police knew nothing of the occupants of either the Lincoln or the Tesla. Police suspicion was grounded solely in the location – the rear parking lot of the Wawa – and the behavior of the individuals, which to their observation, was entirely lawful. They saw no "hand to

---

[24] 2011 WL 2651089 (Del. July 6, 2011).

[25] 2003 WL 22317402 (Del. Oct. 7, 2003).

[26] 981 A.2d 1106, 1112-13 (Del. 2009).

[27] *Register v. State*, 2024 WL 5162047, at *22 (Del. Dec. 19, 2024) (Valihura, J., dissenting).

hand" transaction, no drugs, no money, and the female was not apparently carrying anything back to her car after interacting with the Tesla occupants. Every observation they made was just as consistent with lawful behavior as unlawful behavior and, while its location may have given them a hunch there was something untoward going on, their hunch was not sufficient to justify the gunpoint takedown of the Tesla occupants.

In the world of parsing each encounter, from a "hunch" to a "suspicion" to a "reasonable articulable suspicion" to "probable cause," or every level of intrusion from casual conversation to questioning to a "seizure" or "investigative detention" to a gunpoint arrest, the touchstone of all such analysis is, in the end, one of reasonableness. On these facts, the Court finds that the arrest of the Tesla suspects, on the basis of what was known to the officers at the time of ordering them out of the car at gunpoint, was not reasonable. The Court will therefore grant Defendant's motion to suppress the drug evidence seized from the Tesla.

**IT IS SO ORDERED.**

/s/ Charles E. Butler
Charles E. Butler, Resident Judge

13