**Kenneth HALL, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 62, 2009.**

Supreme Court of Delaware.

Submitted: Sept. 30, 2009.
Decided: Oct. 13, 2009.

---

Edward C. Pankowski, Jr., Esquire, Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice.

The defendant-appellant, Kenneth Hall ("Hall"), filed an appeal from the Superior Court's January 14, 2009, judgments of conviction. Following a bench trial, Hall was found guilty of Possession of a Schedule II Controlled Substance ("PCP") with Intent to Deliver, Possession of Drug Paraphernalia, Possession of a Controlled Counterfeit Substance ("PCP"), and Conspiracy in the Second Degree. In this direct appeal Hall argues that the trial judge committed reversible error when he denied Hall's motion to suppress the evidence seized by police. Hall asserts that the evidence seized was "fruit of the poisonous tree" because the police lacked a reasonable and articulable suspicion to detain him. He maintains that the subsequent search of his person and the vehicle he occupied violated his rights under the Fourth Amendment to the United States Constitution and article I, section 6 of the Delaware Constitution.

We conclude that the trial judge properly relied upon this Court's holding in *Lofland v. State*[1] when it ruled that Hall's detention was justified by a reasonable and articulable suspicion. Therefore, Hall's motion to suppress was properly denied. That detention led to a valid warrantless search of the vehicle and the evidence seized provided a proper basis for Hall's arrest after his detention. Accordingly, Hall's judgments of conviction must be affirmed.

*Facts*

On the evening of August 24, 2008, Detective Gregory Simpler of the Delaware State Police was conducting surveillance as part of the Governor's Task Force, which targets street-level drug dealers in areas known for drug activities. Around 11 p.m., Detective Simpler pulled into the parking lot of the 7–Eleven convenience store on Red Mill Road in Newark and parked next to a gold Oldsmobile. Simpler observed a man later identified as Hall seated in the driver's seat of the Oldsmobile with a female later identified as Hall's girlfriend, Jacqueline Dillon, in the front passenger seat. After several minutes, Simpler watched Hall get out of the Oldsmobile and walk into the convenience store for a few minutes and then return to his car, where he continued to sit.

About five minutes later, Simpler saw a white Ford Taurus pull into the parking lot and park off to the side of the store, even though there were a number of open parking spaces in front of the store. Simpler watched Hall get out of his car, walk over to the Taurus, and get in the back seat. At that point, Simpler decided that Hall's actions were "clearly indicative of a drug transaction, of drug sales." Simpler radioed for assistance from other Task Force officers. Then he parked his car behind the Taurus, got out of his car, and approached the Taurus. As he approached, Simpler saw Hall reach behind his back with his right hand. Simpler ordered Hall to remove his hand from behind his back several times. Hall did not comply.

Detective John Dudzinski arrived at the scene as Simpler was approaching the driver's side of the Taurus. Dudzinski

---

1. *Lofland v. State,* 2003 WL 22317402 (Del. Supr. Oct. 7, 2003).

began to approach the Taurus from the passenger side and also saw Hall reaching behind his back. Dudzinski opened the back, passenger-side door of the Taurus and "detected an overwhelming odor of PCP." The officers removed Hall from the Taurus and searched the vehicle. On the floor, behind the driver's seat, the police found two cigarettes that had been dipped in PCP.

Hall was arrested and taken back to the police station, where he was strip-searched and a vial of PCP was recovered from between his buttocks. Because Hall was on probation at the time of his arrest, the police contacted his probation officer. The probation officer conducted an administrative search of Hall's residence and found four more vials with PCP residue.

### Procedural History

In September 2008, Hall was charged by indictment with Possession of a Schedule II Controlled Substance ("PCP") with Intent to Deliver, Possession of Drug Paraphernalia, Possession of a Controlled Counterfeit Substance ("PCP"), Conspiracy in the Second Degree and Maintaining a Vehicle for Keeping Controlled Substances.

A bench trial was scheduled for January 13 and 14, 2009. On January 8, 2009, Hall filed a motion to suppress the evidence recovered from him on August 24, 2008. Initially, the trial judge declined to consider the untimely motion. When the bench trial concluded, however, the trial judge reconsidered the motion and denied it.

The trial judge found Hall guilty of all of the charges except Maintaining a Vehicle for Keeping Controlled Substances. Hall was sentenced to eight years Level 5 on the drug charge suspended after three years mandatory minimum and one year Level 3 concurrent probation on the conspiracy charge. He was also convicted of

Possession of a Narcotic Substance for which he received one year in jail suspended for one year of Level 2 concurrent probation, and Possession of Drug Paraphernalia for which he received another one year in jail suspended for one year of Level 2 concurrent probation.

### Superior Court Ruling

At the conclusion of Hall's bench trial, the trial judge stated:

The Court is ready to render a decision in this case. Before I begin, I want to address an issue that had come up earlier at the beginning of this case and that dealt with the issue of the motion that was filed out of time to suppress the evidence which I think [defense counsel] wanted the Court to reconsider.

. . .

Under the Fourth Amendment, warrantless searches are presumptively unreasonable unless an exception to the warrant requirement applies. An officer must have a reasonable suspicion of criminal activity to stop and detain a person. When determining whether there was a reasonable suspicion to justify a detention, the Court defers to the experience and training of law enforcement officers. The officer must, however, point to specific and articulable facts which taken together with rational inferences from those facts reasonably warrant the intrusion.

. . .

The Delaware Supreme Court in *Lofland v. State* held that when an officer observes a defendant in an area [known] for drug activity and determines that the defendant's behavior is consistent with the sale of illegal drugs, that is enough to create a reasonable and articulable suspicion that the defendant was engaged in the sale of illegal drugs.

In *Lofland v. State*, the defendant and another man were spotted by a police officer in a well-known drug area in Wilmington. The two men were standing next to a minivan and one of the men leaned inside the passenger window. The police officer ordered the defendant to stop and perform a weapons pat-down search. The defendant ... moved to suppress [evidence] on the grounds that the officer had no reasonable articulable suspicion that the defendant had committed a crime.

The officer testified that the activity of approaching cars and leaning inside a window is consistent with what was referred to as a touter, who approaches a vehicle to find out what type of drugs the people inside the vehicle want.

The Supreme Court held that given the officer's knowledge of the way drug deals are done in that neighborhood, his observation [of] the defendant's conduct was enough to create reasonable and articulable suspicion, that the defendant was engaged in the sale of illegal drugs.

In this case, Detective Simpler was surveying the 7–Eleven parking lot as it was known to have a high level of drug activity. Detective Simpler spotted Hall exit the Oldsmobile which he was riding in and enter the back seat of a Ford Taurus vehicle parked in another area of the 7–Eleven parking lot. Detective Simpler, who has participated in approximately 400 drug investigations, observed this behavior as indicative of a drug transaction, of drug sales.

Based upon the Supreme Court's holding in *Lofland,* the Court finds that given Detective Simpler's knowledge of the way drug transactions are done in the area, his observation of Hall's exiting his own vehicle and entering the back seat of the Ford Taurus was enough to create reasonable and articulable suspicion that Hall was engaged in the sale of illegal drugs.

### Standard of Review

 Police officers may temporarily detain an individual for investigatory purposes—that is, the police may "seize" or "stop" them—based on a reasonable and articulable suspicion of criminal activity.[2] We determine whether a seizure was reasonable under the totality of the circumstances, including the "inferences and deductions that a trained officer could make which might well elude an untrained person."[3] To support a reasonable and articulable suspicion of criminal activity, "the totality of the circumstances [must] indicate[] that the [detaining] officer had a particularized and objective basis for suspecting legal wrongdoing."[4] Under the exclusionary rule, "the State may not use as evidence the fruits of a search incident to an illegal [seizure]."[5]

### State's Contention

The State asserts that trial judge correctly applied the law to the facts of the

2. *See Jones v. State,* 745 A.2d 856, 860–61 (Del.1999) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *see also* U.S. Const. amend IV; Del. Const. art. I, § 6.

3. *See Lopez–Vazquez v. State,* 956 A.2d 1280, 1286–87 (Del.2008) (internal citation and quotation omitted).

4. *Sierra v. State,* 958 A.2d 825, 828 (Del.2008) (citing *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)) (internal quotations omitted). Although the search in *Sierra* was a probationary search (which required reasonable suspicion), *Sierra* applied the "particularized" reasonable suspicion standard from *Arvizu,* a temporary investigatory detention case. *Id.*

5. *Jones v. State,* 745 A.2d at 873.

case when he ruled that the investigative detention of Hall was justified, because the police had sufficient reason to believe that Hall was engaged in a drug transaction. The State argues that the trial judge properly relied on this Court's order in *Lofland v. State*, to conclude that Detective Simpler's training and experience, having participated in approximately 400 drug transactions, allowed him reasonably to suspect that Hall's actions, which took place in an area known for drug activity, were consistent with those of a drug dealer engaged in a drug transaction. Therefore, the State asserts that the investigatory stop and seizure of Hall was reasonable under the circumstances.

### Detention Requires Reasonable, Articulable Suspicion

 A police officer may detain an individual for investigatory purposes if the officer has a reasonable, articulable suspicion that the individual is engaged in criminal activity.[6] Reasonable suspicion is a less demanding standard than probable cause.[7] It depends on the "the officer's ability to 'point to specific and articulable facts which, taken together with rational

inferences from those facts, reasonably warrant th[e] intrusion.'"[8] In determining whether reasonable suspicion exists, the court looks at the totality of the circumstances,[9] "as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[10]

 A person is "seized" within the meaning of the Fourth Amendment when the police, by means of physical force or show of authority, "'communicate[ ] to a reasonable person that he [is] not at liberty to ignore the police presence and go about his business.'"[11] In this case, Hall was "seized" when Detective Simpler parked his car behind the Taurus and blocked it in, then approached the car and ordered Hall "to get his hands out from behind his back."

### Lofland *Precedent*

 Here, the trial judge recited these legal standards before addressing the facts of Hall's case. In applying these legal standards to the facts of Hall's case, the trial judge relied primarily on this Court's analysis in *Lofland v. State*.[12] We con-

**6.** *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Del.Code Ann. tit. 11, § 1902 (2006).

**7.** *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

**8.** *Coleman v. State*, 562 A.2d 1171, 1174 (Del. 1989) (quoting *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. 1868).

**9.** *Jones v. State*, 745 A.2d 856, 861 (Del.1999). *Cf. Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (totality of the circumstances for probable cause).

**10.** *Woody v. State*, 765 A.2d 1257, 1263 (Del. 2001) (quoting *Jones v. State*, 745 A.2d at 861); *see Harris v. State*, 806 A.2d 119, 127 (Del.2002) (noting the "inferences and deductions that a trained officer could make which

might well elude an untrained person"); *Lopez–Vazquez v. State*, 956 A.2d 1280, 1287 (Del.2008) (using a two-pronged analysis that considers "objective observation and consideration of the modes or patterns of observation of certain kinds of law breakers" and "inferences and deductions that a trained officer could make which might well elude an untrained person"). *Cf. Bradley v. State*, 2009 WL 2244455 (Del.Supr., July 27, 2009) (holding there was no reasonable articulable suspicion based upon the record facts).

**11.** *Jones v. State*, 745 A.2d at 862 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)); *see Lopez–Vazquez v. State*, 956 A.2d at 1286–87.

**12.** *Lofland v. State*, 2003 WL 22317402 (Del. Supr. Oct. 7, 2003). Hall's attorney did not cite or discuss *Lofland* in his briefs. Conse-

clude that the trial judge properly relied on this Court's decision in *Lofland* when he held that the police had reasonable and articulable suspicion to detain Hall.

In *Lofland*, a Wilmington police officer observed the defendant and another man standing by the passenger side of a minivan on a street well-known as a drug area. One of the men was leaning inside the window of the van.[13] When the officer approached, the men immediately started walking in opposite directions.[14] The defendant walked toward a nearby housing project but the officer blocked the defendant's path with his police car.[15] The officer testified at the defendant's trial that he believed the defendant's behavior was "consistent with drug activity."[16]

Specifically, the officer testified that the defendant's behavior in *Lofland* was consistent with that of a "touter," who approaches vehicles in the neighborhood, takes drug orders, and then goes and obtains the drugs from a nearby location to deliver to the purchaser.[17] In *Lofland*, we held that the stop of the defendant was reasonable under the circumstances. We explained that, "[g]iven [the police officer's] knowledge of the way drug deals were done in that neighborhood, his observation of [the defendant's] conduct was enough to create a reasonable and articulable suspicion that [the defendant] was engaged in the sale of illegal drugs."[18]

### Lofland *Properly Applied*

In Hall's case, the trial judge concluded that the same reasoning we applied in *Lofland* applies to the facts of this case.

We agree. Detective Simpler was assigned to the Governor's Task Force, which has a primary goal of targeting street-level drug sales. On the evening of Hall's arrest, Detective Simpler was conducting surveillance in targeted areas known for drug activity near and along Kirkwood Highway in Newark. Detective Simpler's training and experience made him highly knowledgeable of drug transactions and the conduct of drug dealers.

Simpler's observations of Hall's conduct in the 7–Eleven parking lot at a late hour led the officer reasonably to conclude that Hall was there to sell drugs. Hall sat in his parked car for several minutes before going into the store. Then he returned to his car, where he continued to sit and appeared to be waiting for someone, rather than pull out of the parking lot and drive away after exiting the store.

When the driver of the Ford Taurus pulled into the parking lot, she parked on the side of the building, rather than in one of the empty spaces in front. The driver and passenger did not go into the store. Instead, they waited in their car while Hall got out of his car, walked over to the Taurus and got in the back seat. At that point, Simpler concluded that what he had observed was "clearly indicative of a drug transaction, of drug sales."

We hold that the trial judge properly ruled that Simpler's conclusion was reasonable, based on both the objective facts and Simpler's "subjective interpretation of those facts," in light of his extensive expe-

---

quently, we directed Hall's attorney to file a supplemental memorandum.

13. *Id.* at *1.

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.*

18. *Id.* (citing *Jones v. State,* 745 A.2d 856 (Del.1999)).

rience in investigating drug transactions.[19] Accordingly, the trial judge did not err when he denied Hall's motion to suppress the evidence obtained as a result of the lawful detention of Hall.

### No Plain Error

■ Hall also argued in his opening brief that even if the police were justified in detaining him, they had no justification for searching the Taurus in which they found the two cigarettes that had been dipped in PCP. Hall concedes that the search of the Taurus incident to his arrest might have been consistent with New York v. Belton,[20] which permits the warrantless search of the passenger compartment of a motor vehicle following the arrest of one of its occupants. But, he urges this Court to adopt a more restrictive rule under the Delaware Constitution. He cites a Pennsylvania Supreme Court case that held that the Pennsylvania Constitution provides greater protection than does the Fourth Amendment under Belton.[21] Hall claims that the Delaware Constitution, like the Pennsylvania Constitution, "would prohibit the search of an automobile incident to arrest, absent probable cause for such a search and exigent circumstances which would make the obtaining of a search warrant impractical."

These arguments were not raised by Hall in the Superior Court and are deemed waived and will not be addressed on appeal

by this Court in the absence of plain error.[22] Just as Hall did not cite our decision in Lofland, he did not cite the recent United States Supreme Court opinion in Arizona v. Gant.[23] We acknowledge that, to the extent Belton permits the search of the passenger compartment of a motor vehicle incident to a valid arrest of one of the occupants, it was explained and limited in Arizona v. Gant earlier this year.[24] The Gant holding, however, does not help Hall establish a showing of plain error in the Superior Court's ruling on the facts of his case.

Hall's contention that "the officers' sole justification for the search of the passenger compartment in which Hall was riding was that it was 'incident to lawful arrest,'" is not supported by the record. The record reflects that the vehicle was not searched incident to Hall's arrest. Although Hall was detained, he was not arrested until after the vehicle had been searched.

In this case, the police had a reasonable articulable suspicion to detain Hall. When Detective Dudzinski opened the back door of the Taurus to accomplish Hall's detention, the police officer "detected an overwhelming odor of PCP." It was that odor that led to the search of the vehicle. Thereafter, the discovery of the PCP cigarettes that were seized from the floor of

---

19. Woody v. State, 765 A.2d 1257, 1263 (Del. 2001).

20. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

21. See Commonwealth v. White, 543 Pa. 45, 669 A.2d 896, 902 (1995) (stating that "[m]erely arresting someone does not give police carte blanche to search any property belonging to the arrestee" and that "there is no justifiable search incident to arrest under the Pennsylvania Constitution save for the

search of the person and the immediate area which the person occupies during his custody").

22. Supr. Ct. R. 8.

23. Arizona v. Gant, —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

24. See id. at 1723. We do not address the Delaware Constitution on this point because the Taurus was not searched incident to Hall's arrest.

the back seat of the Taurus were the basis for Hall's arrest.

In *Gant*, the United States Supreme Court reaffirmed its prior holding that "[if] there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, authorizes a search of any area of the vehicle in which the evidence might be found." [25] The strong odor of PCP establishes probable cause to believe the vehicle occupied by Hall contained evidence of criminal activity. Thus, the warrantless search of the Taurus was proper. Accordingly, Hall has failed to carry his burden of demonstrating plain error.

### Conclusion

The judgments of the Superior Court are affirmed.

---

**25.** *Id.* at 1721 (citing *United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)).