IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | : | ID No. 1706022258 |
| | : | In and for Kent County |
| v. | : | |
| | : | |
| DARRELL H. FAULKNER, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

Submitted: November 17, 2017
Decided: November 30, 2017

On this 30th day of November, 2017, having considered Defendant Darrell Faulkner's (hereinafter "Mr. Faulkner's") motion to suppress, and the State's response, it appears that:

1.    The State charges Defendant Darrell Faulkner (hereinafter "Mr. Faulkner") with Drug Dealing, Possession of Drug Paraphernalia, and Failure to Wear a Seatbelt. Here, Mr. Faulkner moves to suppress alleged crack cocaine seized from his vehicle on June 30, 2017, and his subsequent statements to the police. The Court finds after a November 17, 2017 suppression hearing and review of two body camera videos, that Sergeant Helton of the Smyrna Police Department observed Mr. Faulkner driving without a seat belt and stopped his vehicle. Shortly prior to the stop for the seat belt violation, another Smyrna officer observed Mr. Faulkner in a high crime area that he described as an open air drug market. That officer observed Mr. Faulkner approach and leave the trunk of the vehicle multiple times, with different individuals, while in that high drug crime area. He then relayed that

information to the officers involved in the stop, which included Sergeant Helton and a canine officer.

2.      Both Sergeant Helton and the canine officer were already on site at the time of the stop.   After Sergeant Helton told Mr. Faulkner and his passenger to exit their vehicle, they were directed to stand approximately 25 yards from their vehicle during a canine sweep.  After the canine sweep began, Mr. Faulkner told the police that he did not object to the additional search that was already in progress.  The canine officer's body camera recording showed that after the dog signaled for suspected drugs at the rear of the car, the canine officer located hidden, suspected drugs in a magnetic key holder on the underside of the trunk.  The two officers then placed Mr. Faulkner and his passenger under arrest.

3.      Mr. Faulkner argues that the Smyrna Police did not have an independent justification to extend his detention beyond the time necessary to process a seat belt violation. Namely, he alleges that there was neither additional reasonable suspicion, or alternatively additional probable cause to extend the traffic stop to permit a dog sniff of his vehicle.   In response, the State argues that extending the stop to conduct a canine drug sweep was justified because Sergeant Helton detected a marijuana odor from inside the vehicle.

4.      Both reasonable, articulable suspicion, and probable cause are evaluated based on the totality of the circumstances.[1]  The burden is on the State to justify a warrantless search or seizure.[2]  In a suppression hearing, the Court sits as the finder of fact and evaluates the credibility of the witnesses.[3]  The party with whom the burden rests must persuade the Court by a preponderance of the evidence.[4]

---

[1] *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993).
[2] *State v. Holmes,* 2015 WL 5168374, at *3 (Del. Super. Ct. Sept. 3, 2015)(citation omitted).
[3] *State v. Hopkins*, 2016 WL 6958697, at *2 (Del. Super. Ct. Nov. 28, 2016).
[4] *State v. Lambert*, 2015 WL 3897810, at *3 (Del. Super. Ct. June 22, 2015).

5.	An officer performing a lawful traffic stop may not deviate into the investigation of other offenses unless the officer observes independent facts sufficient to justify an additional intrusion.[5] When an officer detects an odor of contraband coming from a vehicle, an officer has probable cause to believe that the vehicle contains evidence of criminal activity, and a warrantless search is proper.[6] The odor of "marijuana alone, if articulable and particularized, may establish . . . probable cause for officers to believe that contraband is present in the area from which the scent emanates."[7] Pursuant to the vehicle exception to the warrant requirement, such probable cause "justifies the search of every part of the vehicle and its contents that may conceal the object of the search."[8]

6.	There is no dispute that Sergeant Helton lawfully stopped Mr. Faulkner for a seat belt violation. Here, the search challenged is the elongated stop enabling the canine sweep. The State primarily relies upon Sergeant Helton's testimony that he smelled marijuana in the passenger compartment when approaching the vehicle. The State argues that this justified extending the time of the detention beyond the time necessary to conclude the seat belt stop.[9] According to the State, the smell of

---

[5] *Caldwell v. State*, 780 A.2d 1037, 1047 (Del. 2001).

[6] *Chisholm v. State*, 988 A.2d 937 (Table) 2010 WL 424241 at *2 (Del. Feb. 4, 2010) (holding that officer had probable cause, having smelled strong odor of marijuana while approaching passenger side of vehicle and observed individual behaving suspiciously); *Hall v. State*, 981 A.2d 1106, 1114 (Del. 2009) (recognizing that "[t]he strong odor of PCP establishes probable cause to believe the vehicle occupied by [defendant] contained evidence of criminal activity. Thus, the warrantless search of the [vehicle] was proper."); *Jenkins v. State,* 970 A.2d 154, 158–59 (Del. 2009) (holding that defendant's suspicious behavior and the strong odor of marijuana established probable cause to search defendant's car).

[7] *Fowler v. State*, 148 A.3d 1170 (Table) 2016 WL 5853434 at *2 n. 5 (Del. Sep. 29, 2016) (citing *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006)); *see also United States v. Simmons*, 2007 WL 3122169, at *3 (3d Cir. 2007).

[8] *Henry v. State*, 588 A.2d 1142 (Table) 1991 WL 12094 at *4 (Del. Jan. 15, 1991) (quoting *US v. Ross*, 456 U.S. 798, 825 (1982)).

[9] The State also argues that Mr. Faulkner consented to the search, relying on his statements while the dog was in the process of the sweep. While the elongated detention was already in progress,

3

marijuana in the car provided probable cause to arrest Mr. Faulkner. However, Mr. Faulkner contends that Sergeant Helton did not smell marijuana in the car because he did not relay information about the alleged smell to the canine officer at any time before the canine sweep. All Sergeant Helton and the canine officer discussed was removing the occupants from the car, patting them down, and conducting a canine sweep because the passenger recently possessed heroin in a hotel. The Court agrees with Mr. Faulkner's argument that Sergeant Helton's failure to relay to his fellow officer that he smelled marijuana in the car should be evaluated when assessing Sergeant Helton's credibility. Otherwise, it is immaterial that two arresting officers on the scene did not share separately possessed information relevant to reasonable suspicion or probable cause.[10] Moreover, as the Delaware Supreme Court has recognized, "[t]he content of the arresting officer's thoughts do not determine his power to arrest [or search]."[11]

7.  After observing Sergeant Helton's demeanor on the witness stand, the Court finds credible his testimony that he smelled marijuana upon his initial approach of the vehicle. His testimony is also corroborated in two ways, even though the body camera video confirms that Sergeant Helton did not relay that information to the canine officer. First, *after the arrest*, body camera footage shows that the canine officer separately verbalized that he smelled the strong odor of

---

he encouraged the canine officer to continue the sweep. The Court declines to separately address whether that constitutes valid consent under the circumstances of this case.

[10] *C.f. Holmes*, 2015 WL 5168374 at *4 (recognizing that the collective knowledge doctrine's requirement that information be relayed between officers is only implicated if an officer **not connected** to the arrest relays information relied upon by the arresting officer or officers). Here, both officers were directly connected to Mr. Faulkner and his passenger's detention, search, and arrest.

[11] *Stafford v. State*, 59 A.3d 1223, 1231 (Del. 2012).

4

marijuana emanating from the passenger. In addition, the passenger later admitted that he had been smoking marijuana shortly prior to the arrest.[12]

8. In its analysis, the Court next finds that the police extended the stop beyond the length necessary to deal with a seat belt violation. If the matter remained on the *Terry* detention level of the spectrum (as opposed to an arrest) during the canine sweep dog sniff, then additional facts rising to the level of reasonable, articulable suspicion would be necessary.[13] On the other hand, if Mr. Faulkner was deemed arrested prior to the dog sniff, then probable cause of criminal activity other than a seat belt violation would be necessary.

9. Here, after considering the testimony at the hearing and carefully reviewing the videos, the Court finds that Mr. Faulkner was not placed under arrest until after the canine officer completed the sweep, which lasted only several minutes after he and the passenger stepped out of the vehicle. Namely, he was not placed under arrest until the time he was handcuffed. The Court bases its finding that the level of restraint was no more than a detention on the following facts: Mr. Faulkner's liberty was not directly restrained before that point; he smoked during that time; and his demeanor supports this finding since he sat on the curb and talked freely regarding unrelated matters with the canine officer. Finally, his surprised reaction when later told immediately before he was placed in handcuffs that he would be "detained" is also a circumstance which supports this conclusion. Under the totality of the circumstances, which include evaluating the actions of the officers, Mr. Faulkner's action during the dog sweep, and Mr. Faulkner's reaction to his arrest,

---

[12] The Court does not rely on this statement admitting use, or the canine officer's later comments on the video regarding the strong odor of marijuana to retroactively justify the search. It could not retroactively justify a search. Nevertheless, the Court has considered this evidence for the limited purpose of assessing the credibility of Sergeant Helton's testimony that he would have also been reasonably expected to have smelled marijuana at the time of his initial encounter.

[13] *Caldwell*, 780 A.2d at 1047.

the Court finds he was not placed under arrest until handcuffed. That occurred after the dog alerted to the presence of drugs, and after the canine officer located the suspected cocaine.

10. Mr. Faulkner correctly argues that the pat down of Mr. Faulkner's passenger was very unusual. In fact, it clearly exceeded the scope of a pat down search for weapons as characterized in the officer's testimony. Namely, Sergeant Helton meticulously searched the passenger's pockets, examining money and other packaging, and searched his shoes for "contraband." Mr. Faulkner, however, has no standing to challenge an impermissible search of his passenger. In one sense, the treatment of the passenger could be a factor supporting a finding that that Mr. Faulkner was also under arrest at the same time. Here, however, as evidenced in the videos, Mr. Faulkner's lack of concern or reaction at that point does not support the fact that a reasonable person would feel under arrest at that point. Namely, Mr. Faulkner smoked, joked with the officers, and sat carefree on the curb during that exchange. The stop did not rise to the level of an arrest as far as Mr. Faulkner was concerned until he was told he would be detained and was placed in handcuffs.

11. Accordingly, in order to justify the prolonged detention for the drug sweep, the police needed reasonable, articulable suspicion that there was additional related criminal activity, above the seat belt violation.[14] Here, the combination of the smell of marijuana from within the passenger compartment, and the relayed circumstances regarding Mr. Faulkner's suspicious activity at the nearby high drug crime area provided the officers justification for this additional limited detention.

12. Although the Court does not find that Mr. Faulkner was under arrest prior to the conclusion of the canine sweep, in the alternative, if he was deemed to be under arrest immediately upon his exit from the vehicle, the result would be no

---

[14] *Id.*

6

different. Namely, the smell of marijuana from within his passenger compartment together with relayed information regarding prior suspicious activity in a known drug area provided probable cause to search even the vehicle's interior.[15]   Since the evidence in this case independently rose to the level of probable cause, it follows that an external canine sweep of the vehicle would also be justified on that basis.

WHEREFORE, for the aforementioned reasons, Defendant's motion to suppress is DENIED.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge

---

[15] *Fowler*, 2016 WL 5853434 at *2 n. 5.