**THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID No. 2105007121 |
| | ) | |
| LOUIS KENT | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: August 31, 2022
Decided: October 7, 2022

**MEMORANDUM ORDER**

On this 7th day of October 2022, upon consideration of Defendant, Louis Kent's ("Defendant") Motion to Suppress Evidence ("Motion"),[1] the State's Response,[2] testimony and evidence adduced at a suppression hearing,[3] and the parties' supplemental briefing,[4] **IT IS HEREBY ORDERED** that Defendant's Motion is **DENIED** for the following reasons:

**I. Factual and Procedural History**

1. On May 14, 2021, Wilmington Police Department officers Justin Wilkers and Logan Crumlish, observed a black Chrysler 300 with "heavy window tint,"

---

[1] D.I. 14.

[2] D.I. 20.

[3] The Court held a two-day suppression hearing on June 24 and July 13, 2022. This Order will cite to the hearing transcripts as "June 24 Hr'g. Tr. at [page number]" and "July 13 Hr'g. Tr. at [page number]," respectively.

[4] D.Is. 32, 33.

driven by Defendant. The vehicle came to a stop at the intersection of 7th and Monroe Streets, and then "abruptly pull[ed] off from the stop at a high rate of speed," endangering a mother and child who were crossing the street.[5] Officer Wilkers testified that the near collision with the pedestrian was what initially drew his attention to the vehicle. He however recalled that he had seen the vehicle in the area before, because it had a dealer tag which made it "stand out."[6]

2. The officers stopped Defendant's vehicle at the 700 block of North Madison Street.[7] Officer Wilkers asked about the status of the vehicle's registration due to the dealer tag. Defendant was unable to provide proper registration documents for the vehicle.[8] Officer Wilkers testified that he smelled the odor of unburnt marijuana immediately upon his approach to Defendant's vehicle.[9] Officer Wilkers also testified that he asked Defendant if there was illegal contraband in the vehicle, and Defendant replied "Yeah, there's some weed in the car. I smoke

---

[5] June 24 Hr'g. Tr. at 13. Defendant testified that he accelerated at a normal speed, at about 15-20 mph, after stopping at the intersection, and denied that he endangered anyone in the street. July 13 Hr'g. Tr. at 43. Defendant also produced witnesses that corroborated his testimony. *See* June 24 Hr'g. Tr. at 116-18.

[6] June 24 Hr'g. Tr. at 13.

[7] Officer Wilkers testified that, by the time they caught up with Defendant's vehicle, Defendant was already parked and in the process of exiting the vehicle. The officers then ordered Defendant back into the car. *Id.* at 19.

[8] *Id.* at 28-29. According to Officer Wilkers, Defendant told him the vehicle was owned by a dealership of which Defendant was an employee. Defendant also stated to Officer Wilkers that the car was purchased with a salvage title and was in the process of being repaired. *Id.*

[9] *Id.* at 20.

weed."[10]  Defendant denies making that statement.  Defendant testified that he was asked by the officer whether there was marijuana in his car, but he replied "no".[11]

3.  Officer Wilkers directed Defendant out of the vehicle to perform a search of his person.   Officer Wilkers testified that at this point Defendant became "extremely argumentative" and "verbally combative."[12]  Defendant refused to exit the car and indicated he needed to call his attorney.[13]  Officer Wilkers also observed that Defendant was "extremely nervous" began stuttering and was evasive when answering questions.[14]

4.  Defendant eventually complied with the officer's order after talking to his attorney on the phone and exited the vehicle.  The officers did a pat-down search of Defendant and recognized a handgun magazine in Defendant's waistband area.[15]  Officer Wilkers testified that at this point Defendant began to look up and around as if looking for an escape route.[16]  Officer Wilkers placed his taser against Defendant

---

[10] *Id.* at 29.

[11] July 13 Hr'g. Tr. at 47.

[12] June 24 Hr'g. Tr. at 29.

[13] *Id.*  Officer Wilkers testified that the situation struck him as "odd," based on his thirteen years of experience, because Defendant initially had no issues exiting the car before the officers approached him and later refused to do so.  *Id.* at 29-30.

[14] *Id.* at 30.

[15] *Id.* at 31.  Officer Wilkers initiated a pat-down but, due to the growing crowd, quickly passed Defendant off to officer Crumlish who conducted a more thorough pat-down.
[16] *Id.*

and Defendant remained compliant.[17]  Officer Crumlish removed from Defendant a black in color, 9mm Polymer80 semiautomatic handgun that contained an extended magazine, an obliterated serial number and 13 live rounds of ammunition.[18]  The officers took Defendant into custody and transported him back to the police station. Defendant granted written consent to search the vehicle, and a plastic bag containing 26 grams of marijuana was located on the front passenger seat.[19]  In addition to the firearm, cash worth $2,714 of U.S. Dollars was found on Defendant's person.[20]

5. On July 21, 2021, Defendant was indicted on the charges of Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, Possession of a Weapon with a Removed, Obliterated or Altered Serial Number, Carrying a Concealed Deadly Weapon, Drug Dealing, Drag Racing and Other Speed Contests, Operation of an Unregistered Motor Vehicle, and Operation of a Vehicle with Noncompliant Window Tinting.

6.  On May 31, 2022, Defendant filed this Motion to exclude from use at trial all evidence seized from Defendant and his vehicle, including all statements that he made.  The State filed a Response on June 21, 2022.  The Court held a suppression

---

[17] *Id.*

[18] *Id.*

[19] *Id.* at 32.

[20] *Id.* at 31.

hearing on June 24 and July 13, 2022. Thereafter, the Court requested supplemental briefing from the parties which was submitted on August 31, 2022. This matter is now ripe for the Court's consideration and decision.

## II. Parties' Contentions

7. Defendant contends that the purported reason for the traffic stop – a rapid acceleration of the vehicle which placed a woman and child in danger – is refuted by credible evidence provided by multiple eyewitnesses. In addition, even if the traffic stop is deemed valid, Defendant argues that the pat-down search was illegal because there was no reasonable, articulable suspicion to believe that Defendant was involved in criminal activity or that Defendant was armed or presented an immediate danger to the officers.

8. The State argues that the initial traffic stop and subsequent detention and pat-down were valid under the totality of the circumstances. Specifically, the State points to the police testimony that: (i) Defendant drove his vehicle erratically, which endangered a mother and child, (ii) Defendant did not have a tint waiver, despite having heavy tint, and (iii) Defendant did not have a valid registration, all of which together provided reasonable suspicion of a traffic violation which justified the traffic stop. The State contends that the pat-down was justified by: (i) the smell of raw marijuana, (ii) Defendant's admission of possession of marijuana, (iii)

5

Defendant's nervous and combative behavior, and (iv) officer Wilkers' pre-existing knowledge of Defendant's criminal record.

### III. Standard of Review

9. Superior Court Criminal Rule 12(b)(2) permits a defendant to file a motion to suppress evidence prior to trial.[21] "On a Motion to Suppress, the State bears the burden of establishing that the challenged police conduct comported with the rights guaranteed [the defendant] by the United States Constitution, the Delaware Constitution, and Delaware statutory law."[22] The burden of proof on a motion to suppress is by a preponderance of the evidence.[23]

### IV. Analysis

**A.    The traffic stop of Defendant's vehicle was valid.**

10. "Police may stop and detain a motorist whom they reasonably suspect of criminal activity, which includes violation of our traffic laws."[24] "A determination of reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in

---

[21] Super. Ct. Crim. R. 12(b)(2). Defendant sought and was granted leave to file his Motion to Suppress out of time.

[22] *State v. Kang*, 2001 WL 1729126, at *3 (Del. Super. Nov. 30, 2001) (internal citation omitted).

[23] *Id.* (internal citation omitted).

[24] *Houston v. State*, 251 A.3d 102, 108-109 (Del. 2021) (internal citation omitted).

the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[25] "In determining whether there was reasonable suspicion to justify a detention, the court defers to the experience and training of law enforcement officers."[26]

11. The record in this case demonstrates that the officers were parked at the corner of 7th and Monroe Streets when Defendant's vehicle pulled up to the stop sign on Monroe Street. The officers observed the dark tint and dealer tag on Defendant's vehicle, which gave rise to a reasonable suspicion of a violation of 21 *Del. C.* § 4313 and 2 Del. Admin. Code § 2277. In addition, the officers observed that Defendant abruptly accelerated his vehicle from the stop sign at a high rate of speed and almost struck a mother and child who were crossing the street. This created a reasonable suspicion of a violation of 21 *Del. C.* § 4175 and/or 21 *Del. C.* § 4175A.

12. At the hearing, Defendant attempted to isolate the reason for the stop to the near collision with the pedestrian and discredit that reason as untrue. Defendant argues that, although the officers noticed the heavy window tint and dealer tag on Defendant's vehicle, the actual reason they cited for their stop of Defendant's

---

[25] *Jones v. State*, 745 A.2d 856, 861 (Del. 1999) (internal citations omitted).
[26] *Flowers v. State*, 195 A.3d 18, 27 (Del. 2018) (internal citation omitted).

vehicle was the near collision with the pedestrian.[27]  However, there can be multiple bases for which an officer stops an individual, any one of which could give the officer reasonable suspicion to stop.  Here, even though the officers articulated the near collision as the basis for the stop, they could have validly stopped and questioned Defendant based solely on the heavy tint and/or dealer tag.

13.  Moreover, the Court finds the officers' testimony regarding Defendant's excessive acceleration and near collision with the pedestrian to be credible.  The Defendant's testimony diverges from the officers' testimony on this issue.  Defendant denied that he accelerated at a high rate of speed and called several witnesses in an attempt to corroborate his testimony.  Specifically, Defendant called Sharnagia Watson as the woman who was allegedly almost struck by Defendant's vehicle.  She testified that Defendant did not drive abruptly when pulling off from the stop sign, and that she was not in the street at that time or in any way endangered by Defendant's vehicle.[28]  The officers contend that Ms. Watson was not the woman that was almost struck by Defendant's vehicle.[29]  Officer Crumlish testified that the woman on the date in question was taller and thinner and when he saw Ms. Watson,

---

[27] *See* June 24 Hr'g. Tr. at 16.

[28] July 13 Hr'g. Tr. at 32.

[29] Defendant contends that Officer Wilkers can be heard, in a cell phone video of him questioning Defendant at the scene, mentioning Ms. Watson by name as the victim.   Def.'s Mot. to Suppress, Ex. 1.  After review of the cell phone video, the Court does not hear any of the officers refer to Ms. Watson by name.

8

it "did not bring [to him] any memory at all."[30]  Officer Wilkers also testified that Ms. Watson's physical appearance and stature was "totally inconsistent" with the female that was crossing the street that day.[31]

14. The Court sits as the finder of fact at a pretrial suppression hearing and determines witness credibility.[32]  The Court finds the officers' testimony concerning the basis for the stop to be credible. The officers could have easily invoked Defendant's heavily tinted vehicle as the basis for the stop.  Because Defendant failed to provide a valid tint waiver[33], this would have objictified the validity of the stop and obviated any need to engage in an assessment of credibility.  Instead, the officers testified that while they noticed the heavy tint on Defendant's vehicle, the impetus for which they initiated the stop was his abrupt acceleration and near collision with a woman and her child.  It is highly unlikely that the officers would fabricate such a story, particularly because they had a bulletproof justification for the stop if they needed one.  For the foregoing reasons, the Court finds that the stop of Defendants' vehicle was based upon reasonable, articulable suspicion.

**B.    The pat-down search was justified by reasonable suspicion that Defendant was engaged in criminal activity and might be armed.**

---

[30] July 13 Hr'g. Tr. at 72.

[31] *Id.* at 80.

[32] *Turner v. State*, 957 A.2d 565, 571 (Del. 2008).

[33] *See* June 24 Hr'g. Tr. at 73.

9

15.    The Court next considers the validity of the pat-down search of Defendant.  Police officers may conduct a *Terry* stop and frisk when they have "reasonable, articulable suspicion that a suspect is armed and engaged in criminal activity."[34]  "A *Terry* stop must be limited, justified at its inception, and 'reasonably related in scope to the circumstances which justified the interference in the first place.'"[35]  The form of search deemed reasonable under these circumstances is also limited to "a 'frisk' or pat down to find weapons."[36]

16.  The Court finds that the officers had reasonable suspicion that Defendant was engaged in criminal activity before they conducted the pat-down search.  Here, Defendant first failed to produce a valid title or registration to the vehicle.  Officer Wilkers testified that, upon approaching Defendant's vehicle, he "immediately" smelled the odor of unburned marijuana.  When asked by Officer Wilkers whether there was any illegal contraband in his vehicle, Defendant answered in the affirmative and further stated "I smoke weed."  In addition to the odor and admission of possession of marijuana, Defendant displayed nervous and pugnacious behavior, refused to comply with the officers' commands, and took a flight stance after exiting

---

[34] *Flowers*, 195 A.3d at 23 (internal citations omitted).

[35] *Id.* at 25 (internal citations omitted).

[36] *Id.* at 26 (citing *Terry v. Ohio*, 392 U.S. 1, 26 (1968)).

10

the car.  Considering all of these pertinent factors, the Court finds that reasonable suspicion of criminal activity was established under the totality of the circumstances.

17.  Defendant relied upon *State v. Juliano*,[37] arguing that the smell of marijuana is an insufficient basis to establish reasonable suspicion of criminal activity.  In *Juliano*, a juvenile was placed under arrest and subjected to a warrantless search of her person at the scene, after the police officer detected a strong odor of marijuana emanating from the vehicle and from the place where the juvenile sat.[38]  The Delaware Supreme Court held that the odor of marijuana alone, without any other observations, did not provide the required probable cause for the arrest and search of the juvenile.[39]

18.  This case is distinguishable from *Juliano* in several respects.  First, in *Juliano*, the juvenile was placed under arrest before any search was conducted, and the issue before the Court was whether probable cause was established to justify the arrest.  Here, Defendant was subjected to a *Terry* stop and frisk, and the State needs to only demonstrate reasonable, articulable suspicion, a less stringent standard than probable cause.[40]  Moreover, in this case, the officers' suspicion of criminal activity

---

[37] 260 A.3d 619 (Del. 2021).

[38] *Id.* at 623.

[39] *Id.* at 631-34.  The Court conducted its analysis and came to its conclusion in light of the 2015 decriminalization of possession of personal use quantities of marijuana.

[40] *Flowers*, 195 A.3d at 23 (internal citations omitted).

11

was based on a variety of factors besides the odor. Here, Defendant admitted that he had marijuana in his vehicle. Defendant also displayed behaviors that were characterized by the officers as "extremely nervous,"[41] combative, and evasive. The Court finds that these facts, when evaluated under a totality of the circumstances, are sufficient to support a reasonable, articulable suspicion that Defendant was engaged in criminal activity.

19. Besides the suspicion of criminal activity, the objective facts also made it reasonable for the officers to suspect that Defendant was armed with a weapon and posed a threat to officer safety. Under Delaware law, a police officer may conduct a pat-down search for weapons if "he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime."[42] "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."[43]

20. Here, Officer Wilkers testified that he was familiar with Defendant's criminal record prior to the stop, which includes a 2014 conviction of assault first

---

[41] Defendant's behaviors included stuttering speech, heavy breathing, and sweating. *See* June 24 Hr'g. Tr. at 30; July 13 Hr'g. Tr. at 13.

[42] *Flowers*, at 28.

[43] *Robertson v. State*, 596 A.2d 1345, 1352 (Del. 1991) (quoting *Terry v. Ohio*, 392 U.S. at 27).

degree with a firearm.[44] Officer Wilkers also testified that he had responded at various times to incidents of crimes, including drug sales, disorderly persons, and loud music in the area of the city where the stop and frisk at issue occurred, and that he had interaction with Defendant during some of those investigations.[45] The Court finds that this specific pre-existing knowledge of and interaction with Defendant, coupled with Defendant's confession of possession of marijuana, his nervous and obstreperous behavior, and his failure to comply with the officers' commands, constitute sufficient facts to justify a reasonable concern for the officers' safety.[46]

21. This case is analogous to *Robertson v. State*.[47] In *Robertson*, a police officer's questioning of the defendant, after an initial stop based on a noise violation, made the officer believe that the car driven by the defendant might have been stolen. The officer asked the defendant to exit the car and proceeded to pat him down for weapons. The Delaware Supreme Court found that the pat-down search was justified by the fact that the area where the incident occurred "had been frequently reported for drug activity," that the officer "at the moment was alone confronting

---

[44] June 24 Hr'g. Tr. at 20, 61.

[45] *Id.* at 53-54.

[46] *See U.S. v. Cole*, 425 F.Supp.3d 468, 488-89 (W.D. Pa. 2019) (finding officers possessed a reasonable belief that the detainee might be armed in a drug-related investigation based on facts that "drug dealers often carry firearms," that the place the detainee visited shortly before the traffic stop was known for drug activity, that the detainee was on federal probation, that the detainee's companion was visibly nervous, and that officers saw an unnatural bulge in the detainee's pants).

[47] 596 A.2d 1345 (Del. 1991).

three individuals," that "the defendant was seated in a motor vehicle," and that "the officer suspected that the car was stolen."[48] Three of the four factors found by the *Robertson* Court to support a valid pat-down search are also present here, as there were previous incidents of drug sales reported in the area at issue, Defendant was seated in a motor vehicle, and Defendant confessed that he possessed marijuana in his car.[49] There are also pertinent facts in this case that were not present in *Robertson*, including Officer Wilkers' personal knowledge of the gun-related criminal history of Defendant and Defendant's nervous, combative, and evasive behavior when asked to exit the car.

22. Also, this case is distinguishable from the recent Delaware Supreme Court precedent, *Holden v. State*.[50] There, the Court found a pat-down search of the defendant, a passenger in a vehicle with a fictitious tag, illegal because the police officer immediately asked the defendant out of the vehicle and frisked him, after the driver was unable to answer questions regarding the vehicle's ownership.[51] The

---

[48] *Robertson*, 596 A.2d at 1353. The *Robertson* Court noted that ("[I]nvestigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Id.* (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)).

[49] The fourth factor in *Robertson*, that the police officer was outnumbered by the suspects he confronted, was not present in this case. However, although the *Robertson* Court listed that as a fact supporting the validity of the pat-down search, what happened there is that, up to the point the police officer asked the defendant to exit the car, he was the sole officer on the scene. But as the defendant stepped out of the vehicle, two other officers arrived.

[50] 23 A.3d 843 (Del. 2011).

[51] *Id.* at 848-50.

*Holden* Court held that a pat-down search is generally justified based on "the nature of the suspected crime, a sudden reach by the individual, a bulge, or a history with the specific individual" and found none of those factors were present there. Here, unlike *Holden*, Defendant was suspected of a drug-related crime[52] and the police officers had specific knowledge about the criminal history of Defendant. The *Holden* Court also noted that "[n]othing in the record indicates that this was a high crime area" and that "[the defendant] cooperated with the investigation."[53] In this case, there were reported drug activities in the area at issue and Defendant was not initially compliant with the officers' commands to exit the car. For the foregoing reasons, the Court finds that the officers possessed an objectively reasonable belief that Defendant was engaged in criminal activity and was presently dangerous. Thus, the pat-down search was justified.

## C.     The Officers possessed independent probable cause to search Defendant's vehicle.

23.     In this case, the pat-down search uncovered a firearm on Defendant's person, which resulted in his arrest and the subsequent search of the vehicle. Even if the Court found that the pat-down search was illegal or the officers did not uncover

---

[52] *See Cole*, 425 F.Supp.3d at 489 ("[W]here there are drugs, there are often guns.") (internal citation omitted).

[53] *Holden*, at 850.

the firearm, there is still independent probable cause for the officers to search Defendant's vehicle.

24. Under Delaware law, a search of "any area of the vehicle" is authorized "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity."[54] Here, after a valid traffic stop, the officers smelled a strong odor of raw marijuana upon approaching Defendant's car. Moreover, Defendant admitted that he had marijuana in his car. These facts are analogous to those in *Valentine v. State*.[55] In *Valentine*, the Delaware Supreme Court found that the search of the defendant's car was valid after the police officer stopped the car and "smelled marijuana, although [the officer] could not tell if it was burnt or raw."[56] In this case, the police officers not only smelled an odor of raw marijuana, but also obtained Defendant's confession that he possessed marijuana in his car. These facts, coupled with Defendant's nervous and combative behavior and resistance in complying with the officer's order to exit the car, created probable cause for the officers to search the car.

25. Defendant, again relying upon *Juliano*, argued that an odor of marijuana alone does not establish the required probable cause to search his car or person. As

---

[54] *Hall v. State*, 981 A.2d 1106, 1114 (Del. 2009) (quoting *Arizona v. Gant*, 556 U.S. 332, 347 (2009)).

[55] 207 A.3d 166 (TABLE), 2019 WL 1178765 (Del. March 12, 2019).

[56] *Id.* at *1.

16

illustrated by a recent decision of this Court, *Juliano* "explicitly declined to determine whether the odor of marijuana was sufficient to establish probable cause for the search of the vehicle."[57] Defendant argued that the odor of raw marijuana is insufficient to create probable cause, citing the Delaware Medical Marijuana Act,[58] which decriminalized personal use quantities of marijuana. However, as observed in *Valentine*, even with the Delaware Medical Marijuana Act in place, marijuana still "was, and remains, contraband subject to forfeiture" and the odor and possession of marijuana, "raw or burnt," is still relevant to determination of probable cause.[59]

**D.     Miranda Warnings were not required before the officers questioned Defendant about marijuana.**

26.  In addition to the challenges to the initial traffic stop and the subsequent pat-down, Defendant also argues that he should have been given a Miranda Warning before the officers questioned him about contraband in the car.[60] Defendant's argument is misplaced. The Court finds that, because those questions were prompted by the course of events after a valid traffic stop, including the officers' smell of odor

---

[57] *State v. Harrison*, 2022 WL 2783810, at *4 (Del. Super. July 14, 2022).

[58] 16 *Del. C.* §§ 4901A-28A.

[59] *Valentine*, at *2.

[60] The Miranda issue was not raised in Defendant's Motion but was raised for the first time at the suppression hearing. While this should be a basis for a waiver of that argument, the Court here considers and rules on it.

of marijuana, a Miranda Warning is not required as Defendant was not under custodial arrest at that time.[61]

## V. Conclusion

For the reasons stated above, the State has met its burden and established a reasonable articulable suspicion for the traffic stop and the subsequent pat-down of Defendant's person which uncovered the weapon and ammunition. There is also independent justification for the search of Defendant's vehicle. Therefore, Defendant's Motion to Suppress is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

Original to Prothonotary

Cc:   Karin M. Volker, DAG
      Joseph W. Benson, Esquire

---

[61] *See Loper v. State*, 8 A.3d 1169, 1176 (Del. 2010) ("[P]ersons temporarily detained pursuant to [traffic] stops are not 'in custody for purposes of *Miranda*.") (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)).